**Barry H. Evenchick, Esq.**
**Janie Byalik Esq.**
**PASHMAN STEIN WALDER HAYDEN, P.C.**
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Giovanni Tosti<br><br>Plaintiff,<br><br>v.<br><br>Silver Star Motors, LLC, and Michael Cohen<br><br>Defendants. | Civ. Action No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Giovanni Tosti ("Tosti"), by and through his counsel, Pashman Stein Walder Hayden, a Professional Corporation, by way of complaint against Defendants, Silver Star Motors ("Silver Star" or the "Dealership") and Michael Cohen ("Cohen"), says:

## NATURE OF THE ACTION

1. This is a civil action for damages and other remedies brought by Tosti against Cohen and the Dealership in connection with defamatory statements that Defendants made, which resulted in the termination of Tosti's employment.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

3. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states as required under 28 U.S.C. § 1332(a).

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because Silver Star's principal place of business is located in New York and the Eastern District of New York is the judicial district in which a substantial part of the events giving rise to the claims occurred.

5. This Court has personal jurisdiction over Cohen because he is a resident of New York, and owns and operates Silver Star, whose principal place of business is located in Long Island City, New York.

## PARTIES

6. Plaintiff, Giovanni Tosti, is an individual residing at 5875 Collins Avenue in Miami Beach, Florida.

7. Defendant, Silver Star, is a limited liability company organized under the laws of the State of New York.

8. Silver Star's principal place of business is located at 3411 Northern Boulevard, Long Island City, New York, 11101.

9. Michael Cohen is an individual, who, upon information and belief, resides at 49 Rolling Hill Lane, Old Westbury NY, 11568.

10. Michael Cohen is the owner of Silver Star, and during the relevant time period, Giovanni Tosti was employed as the general manager of Silver Star.

## FACTUAL BACKGROUND

11. In or around October of 2010, Cohen, through a mutual acquaintance, approached Tosti about the possibility of hiring him to oversee, manage, and run a Mercedes Benz dealership in Long Island City, New York that Cohen owned.

12. Apparently the Mercedes Benz dealership was struggling, and Cohen desperately needed assistance to turn it into a profitable venture.

13. At the time that Cohen first approached Tosti, Tosti was working as a manager at a Lexus dealership in Boston and earning about $600,000 per year.

14. Although Tosti was satisfied with his job and salary at the Lexus dealership, he reluctantly agreed to meet with Cohen. During the meeting with Tosti and his wife, Cohen stated that he had invested all of his money in Silver Star but did not know how to successfully operate a car dealership and had hoped to bring Tosti on board to make the business viable. Tosti had extensive experience in the field and Cohen knew that hiring Tosti would help ensure that his business would flourish.

15. Cohen promised that if Tosti came on board, he would make it worth his time and effort and would compensate him handsomely. Tosti expressed to Cohen that although he would be willing to relocate to New York to be closer to his children, his main concern was retirement, and he needed to be absolutely certain that he would be taken care of after retiring. At that time, Tosti was 55 years old and earning $600,000 per year, so he would only make the move to a place that could guarantee his future.

16. The parties agreed on an initial salary of $480,000 and six percent of the net profit for the first $2,000,000 net and 10 percent after that, plus benefits, a demo car, gas and expenses. This was significantly less than what Tosti had made at the Lexus dealership, and the cost of living in New York was considerably more than in Boston.

17. In addition, Tosti had to relocate his wife and son at a later date because his son had to finish the school year in Boston. As a result, Tosti had to pay for two homes in the meantime.

18. Tosti made clear that he would take the job only if he was promised a "golden parachute" to retire – he absolutely needed a payout for his retirement years.

19. Cohen listened carefully, said that he understood, and assured Tosti that he and his family would be taken care of.

20. Based upon Cohen's assurances, Tosti relocated to New York, and joined Silver Star Motors as its general manager.

21. Prior to commencing employment, Tosti went to pick up his company car. Cohen provided him with a loaner car, which Tosti assumed was only temporary. However, after a few weeks, Tosti asked for his company car – i.e., a demo car with dealer plates. Cohen responded that he and the other employees all drove loaner cars. Tosti advised that this was against Mercedes Benz's policy and that loaner cars were to be used solely for service customers. Tosti did not believe it was ethical to drive a car that Mercedes subsidized for a different purpose. As such, Tosti insisted on a demo vehicle with dealer plates.

22. Tosti became the only employee of Silver Star that drove a dealer plated demo car while everyone else, including Cohen's family members, friends, and other employees continued to drive loaner cars. Cohen continued to let Mercedes Benz subsidize those cars and, upon information and belief, falsified records. Tosti refused to participate in those acts.

23. Tosti began his employment at Silver Star in February, 2011.

24. Over the course of the next several years, the business flourished. Under Tosti's management, the dealership saw tremendous growth both in size and profit, and received a terrific customer service index. The dealership went from ranking in the 40's in the Eastern Region in sales to number 5 in the Eastern

Region under Tosti's management. Silver Star went from selling 750 cars a year to approximately 2500 cars a year. It became one of the fastest growing Mercedes Benz dealerships in the country.

25. Cohen continually praised Tosti for his dedication and performance, and Tosti's annual salary grew from $480,000 to $800,000.

26. Cohen advised Tosti that he did such a tremendous job building the business that it went from $19 million that he paid for it to being worth over $90 million. Cohen even had an offer to purchase the Dealership for $90 million.

27. Tosti expressed his disappointment at the prospect of the Dealership being sold and told Cohen that he had planned to continue building the business so that he can have the retirement package that the parties had discussed before he started. Cohen said he supported Tosti expanding the dealership and would honor his retirement plan. Cohen again assured Tosti that he would take care of him given how much he had done for the business.

28. Over the next several years, the dealership continued to grow. Silver Star, under Tosti's oversight, was constructing a ten-story building which would be used as a showroom and residential building. More cars were sold every day, and the business continued to prosper.

29. Tosti continued working day and night to ensure the success of the business. He rarely ever took sick or personal days, and put all his time and energy into building the business.

30. Approximately a year ago, sometime in 2017, a Mercedes Benz service representative came to Silver Star and advised that the Dealership had a high warranty index as compared to the rest of the country.

31. Cohen had a meeting with Tosti and other employees, the service manager and parts and service director, and asked about how to fix the problem. One of the employees suggested that Silver Star put in smaller claims to offset the high suspension claims.

32. Tosti advised that the Dealership should not do anything and thought it would be prudent only to make sure that existing claims were legitimate. If they were, then nothing should be done. Tosti explained that New York has an excessive amount of potholes and bad roads which is why more suspension work was being done.

33. Cohen disagreed with Tosti and told the other Dealership employees to falsely report the existence of smaller claims. The employees obliged (excluding Tosti), and the Dealership's warranty index was lowered.

34. Approximately six months after its first visit, Mercedes Benz sent in a team of warranty auditors to audit Silver Star's warranty department.

35. Mercedes Benz alleged that the Dealership had submitted false warranty claims for small claims. Cohen acted innocently and blamed another employee. Cohen then caused that employee to be fired, claiming that someone had to be a "sacrificial lamb."

36. In May, 2018, Mercedes Benz again visited the Dealership, this time to conduct an audit of the loaner cars. When Mercedes representative began to question Tosti about certain cars that were never loaned to service customers but were instead driven by Cohen's family, friends, or other employees, Cohen asked Tosti to lie to cover up what he had done.

37. Tosti advised Cohen that he refused to lie and participate in Cohen's scheme to defraud Mercedes. Tosti reminded Cohen that the parties had discussed the issue at the commencement of his employment and that Tosti insisted on a demo car with dealer plates for precisely this reason. Mercedes paid for loaner cars that were not being used as loaners, and Tosti wanted nothing to do with it.

38. From that point on, the parties' relationship changed, as did the dynamics at work. Cohen was no longer complimentary of Tosti, often criticized him, and created an unpleasant working environment for Tosti. Nevertheless Tosti continued to work ethically and dutifully as he always had.

39. In July, 2018, representatives from Mercedes Benz returned to conduct a more extensive audit of Silver Star's warranty process. Cohen again

instructed Tosti to go through the files and "clean them up" - i.e., falsify the warranty records. Tosti again refused to participate in Cohen's scheme. Cohen then instructed other Dealership employees to "clean up" the records.

40.     On August 6, 2018, the day before Tosti was due to leave for vacation, Cohen called him into his office and stated "it is time to end our relationship." When Tosti prodded further, and inquired how he could be fired after all that he had done for the business, Cohen replied that he had no choice.

41.     Tosti asked what Cohen meant that he had no choice, and after some further inquiry, asked if Mercedes Benz was putting pressure on him to fire Tosti. Cohen admitted that it was.

42.     Tosti then asked whether Cohen told the representatives at Mercedes Benz that the claims they had been investigating concerning warranty issues and loaner cars was Tosti's fault rather than his own. Cohen did not deny it.

43.     Cohen falsely identified Tosti to representatives of Mercedes Benz as the culprit of the problems that Mercedes had uncovered and then, in order to convince Mercedes that the problem had been eradicated, Cohen fired Tosti.

44.     Cohen gave Tosti just one month severance pay, and otherwise failed to honor any commitment to provide Tosti with post-termination benefits. Unremarkably, given Tosti's termination, he also did not reap the benefits of the "golden parachute" retirement that Cohen had promised him.

45. Tosti's decade of hard work and loyalty was rewarded with an unwarranted termination -- all because Cohen needed another "sacrificial lamb" to blame for his own misconduct.

## CAUSE OF ACTION

### COUNT I (Defamation and Defamation *per se*)

46. Tosti repeats and restates each and every allegation in the preceding paragraphs as if fully set forth at length herein.

47. Cohen made defamatory statements of fact concerning Tosti, which were false, and which were communicated to third persons.

48. Specifically, Cohen told representatives of Mercedes Benz that Tosti falsified records and/or engaged in other wrongdoing in connection with the fraudulent warranty claims and loaner car issues that Mercedes Benz had investigated at Silver Star.

49. The statements made by Cohen were knowingly false, or alternatively, were made with reckless disregard for the statements' truth or falsity, as Cohen, along with other Silver Star employees, were the ones that engaged in the misconduct which he blamed on Tosti.

50. Cohen's defamatory statements of fact have caused Tosti to suffer damages. Indeed, after attributing fault to Tosti for the claims that were the subject

of Mercedes Benz's audit of Silver Star, and to appease Mercedes Benz that the problem was resolved, Cohen terminated Tosti's employment.

51. At the time of his termination, Tosti was over 60 years old and was just a few years away from retirement.

52. Cohen's statements were defamatory *per se* in that they injured Tosti in his trade, business or profession.

53. As a direct and proximate result of Cohen's comments, Tosti has suffered and will continue to suffer, among other things, significant harm to his good names and reputation, mental anguish, and emotional distress.

54. Tosti's termination also significantly limits his employability and causes him to be unable to obtain appropriate employment at another dealership with comparable compensation and retirement package that he was promised at Silver Star.

55. Cohen's conduct was willful, wanton, egregious, and outrageous, and as a result, Tosti has and will continue to suffer injury, damages, and irreparable harm.

56. As an employee and owner of Silver Star, Cohen's defamatory statements fell within the scope of his employment and duties as an owner. Cohen had authority to act on behalf of Silver Star and his statements to Mercedes Benz were made within the discretion afforded to him by virtue of his position and were

made in the course of him discharging his duties. Consequently, Silver Star is liable for the defamatory statements made by Cohen.

**WHEREFORE,** Tosti seeks judgment against Defendants as follows:

a. Damages for lost wages, benefits and other compensation, plus interest thereon;

b. Punitive damages;

c. Equitable relief, including but not limited to reinstatement, as the court deems appropriate;

d. Attorneys' fees and costs;

e. Such other and further relief as the Court may deem equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on each and every issue so triable.

    **PASHMAN STEIN WALDER HAYDEN**
**A Professional Corporation**
Attorneys for Plaintiff
Giovanni Tosti

Dated: November 20, 2018    By: /s/ Barry H. Evenchick
    BARRY H. EVENCHICK

Court Plaza South
21 Main Street – Suite 200
Hackensack, New Jersey 07601
(201) 488-8200
bevenchick@pashmanstein.com